654 S.E.2d 533

**In the Matter of R. Brian PONDER, Respondent.**

No. 26401.

Supreme Court of South Carolina.

Submitted Oct. 29, 2007.

Decided Dec. 10, 2007.

Lesley M. Coggiola, Disciplinary Counsel, of Columbia, for Office of Disciplinary Counsel.

Elizabeth Van Doren Gray, of Sowell Gray Stepp & Laffitte, LLC, of Columbia, for respondent.

PER CURIAM:

The Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR, in which respondent admits misconduct and agrees to either an admonition or a public reprimand. We accept the agreement and issue a public reprimand. The facts, as set forth in the agreement, are as follows.

## FACTS

Respondent, a sole practitioner, employed Jean Knowles as a non-lawyer legal assistant from October 2002 through January 2006. Knowles assisted respondent with the preparation and closing of real estate transactions.

In 2003–2004, respondent began suffering from a serious heart ailment and was hospitalized in intensive care and diagnosed with atrial fibrillation. After release from his initial hospitalization, respondent had additional episodes and emergency hospital treatment. He was advised by his treating physician to alter his lifestyle and to reduce stress.

In January 2004, Knowles offered to reconcile respondent's trust account and to generally manage his trust account. Respondent accepted the offer in an effort to reduce his stress as recommended by his physician. During the time Knowles was assisting respondent with his trust account reconciliations, respondent reviewed her reports and the bank accounts but not the cancelled checks. At the time, electronic copies of the checks were provided by the bank in CD format.

In December 2005, respondent's family began experiencing a series of deaths of close family members. Respondent's sister-in-law died in December 2005, his father-in-law died in February 2006, and his wife's uncle died in March 2006. Knowles' employment was terminated in January 20, 2006 for reasons unrelated to her embezzlement, which had not yet been discovered.

In March 2006, respondent received a "NSF" (non-sufficient funds) notice from the bank concerning his trust account. Respondent represents to ODC that, after receiving the notice, he "meant to report and investigate [that matter] but failed to do so due to several family crises in that time frame." When preparing to respond to inquiries from ODC concerning the matters set forth in the agreement, respondent found the NSF notice and recalled receiving it. Respondent agrees this notice was a red flag that should have caused him to make inquiries into the integrity of his trust account.

In the Spring of 2006, respondent hired an independent bookkeeper to examine his trust account. During the audit, the bookkeeper discovered that CDs containing copies of respondent's returned trust account checks were missing and requested them from the bank.

On June 13, 2006, respondent was notified by his title insurance company that a check in the amount of $113,000 drawn on his trust account had been dishonored upon presentment due to insufficient funds being available in respondent's trust account.[1] At the close of business on June 15, 2006, after obtaining access to the CDs provided by the bank, the bookkeeper confirmed to respondent that there were substantial shortages in his trust account. On June 16, 2006, respondent contacted ODC by telephone, advised ODC of the shortages, and prepared a written self-report.[2] An officer with respondent's title insurance carrier made a complaint to ODC concerning this matter.

Thereafter, respondent deposited $30,000 of personal funds into his trust account and made arrangements to close the trust account which contained the shortages. Later, respondent deposited an additional $13,000 into the account to cover the shortages.

Respondent's audit revealed that, beginning in January 2004 and continuing until her arrest in June 2006 (well after her

[1]. The check had been written to pay off a first lien in connection with a real estate transaction in which respondent had served as the closing attorney.

[2]. Respondent advised the Greenville County Sheriff's Office of this matter. On June 26, 2006, Knowles was charged with Breach of Trust with Fraudulent Intent greater than a value of $5,000.

termination in January 2006), Knowles embezzled $238,672.06. During that period, Knowles (who did not have signatory authority on respondent's trust account) forged respondent's name to 88 checks drawn on respondent's trust account, six of which were written after her termination by respondent. Seventeen of the forged checks exceed $5,100. All of the forged checks were made payable to Knowles, her husband, or her children.

Not until after making the self-report to ODC did respondent request his bank notify ODC of any overdrafts on his trust account as required by Rule 1.15(h), RPC, Rule 407, SCACR. In response to inquires from ODC, respondent represented that he had in fact written the requisite letter to his bank shortly after it became a requirement on October 1, 2005, but did not mail the letter to the bank and only discovered he had not done so when he found the letter in preparation of a response to inquires from ODC.

Respondent did not review cancelled checks from his trust account until he received notice of the overdraft from his title insurance carrier in June 2006. Respondent did not review the cancelled checks from his trust account notwithstanding the requirements of Rule 1.15(a), RPC, and Rule 417, SCACR, which mandate monthly reconciliation of bank statements with trust account records. Respondent recognizes that his failure to fully comply with the published directives of the Court and his failure to more closely supervise Knowles enabled Knowles to commit embezzlement and when compliance with the directives would have revealed the checks she was forging and the resulting shortages in respondent's trust account.

Respondent admits that, as a result of his failure to comply with Rule 1.15, RPC, and Rule 417, SCACR, he did not provide clients with competent or diligent representation. Further, he admits he allowed monies belonging to one client to be used for the benefit of another as a result of the necessity of "lapping" of monies in his trust account due to shortages caused by Knowles' embezzlement.

In mitigation, respondent has been continuously engaged in the practice of law in this state since 1995 and has not previously been the subject of any disciplinary complaint. Respondent self-reported this matter to ODC and has fully

cooperated with ODC's inquiries and efforts to conclude this matter expeditiously. During a portion of the period in which the embezzlement occurred, respondent was dealing with a serious personal health problem and the death of three close family members.

Further, with the best interests of his clients in mind, respondent had the foresight to: 1) obtain fidelity insurance coverage in the amount of $100,000 (which has been paid in full towards the amounts embezzled); 2) deposit $43,000 of his personal funds into the trust account to cover the shortages caused by Knowles' embezzlement;[3] and 3) obtain through errors and omissions coverage and insured closing arrangements with his title company ample funds available to compensate all victims of Knowles' embezzlement, except for possibly himself.

Since discovering the embezzlement, respondent has implemented additional office management procedures designed to more effectively safeguard his clients' funds and to more closely supervise his staff. Respondent represents he is now fully complying with the requirements of Rule 1.15(h), RPC, and Rule 417, SCACR, and will make every effort to strictly comply in the future. Further, respondent represents that his trust account is now balanced. ODC believes these representations to be correct.

## LAW

■ Respondent admits that by his misconduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation); Rule 1.3 (lawyer shall act with reasonable diligence in representing client); Rule 1.15(a) (lawyer shall safekeep client funds); Rule 1.15(g) (lawyer shall not use entrusted property for benefit of any person other than the owner of the property); Rule 1.15(h) (lawyer shall file written directive with financial institution to report to Commission on Lawyer Conduct when instrument is returned against trust account for insufficient funds); Rule 5.3(a) (lawyer shall make reasonable efforts to ensure firm has measures

---

3. Respondent has lost approximately $28,000 in embezzled money which represented his portion of title insurance premiums.

giving reasonable assurances that non-lawyer employee's conduct is compatible with professional obligations of lawyer); Rule 5.3(b) (lawyer having direct supervisory authority over non-lawyer shall make reasonable efforts to ensure non-lawyer's conduct is compatible with professional obligations of lawyer); Rule 5.3(c)(2) (lawyer shall be responsible for conduct of non-lawyer if he has supervisory authority over non-lawyer and knows of the non-lawyer's conduct at a time when its consequences can be avoided but fails to take remedial action); and Rule 8.4(a) (it is professional misconduct for lawyer to violate the Rules of Professional Conduct). In addition, respondent admits the he violated the recordkeeping provisions of Rule 417, SCACR. Respondent acknowledges that his misconduct constitutes grounds for discipline under the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR, specifically Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct).

## CONCLUSION

■ We find that respondent's misconduct warrants a public reprimand. Accordingly, we accept the Agreement for Discipline by Consent and publicly reprimand respondent for his misconduct.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.